We have the case of Susan Boatright and Todd Boatright v. Illinois Farmers Insurance Company, Mid-Century Insurance Company of Los Angeles, California. We have Doug Doris, who is the appellant. And we have Mr. Dan Forsyth, the appellee. Mr. Doris, you may proceed. Your Honor, Susan Boatright was involved in a very serious accident in Carbondale, Illinois. She ended up having to...she is a union painter, by the way. She ended up having to have a fusion surgery to her neck. She incurred $158,000 plus medical bills. On her behalf, we filed a personal injury cause of action against the at-fault driver. Eventually, the at-fault driver's bodily injury carrier, liability carrier, settled the underlying personal injury suit for the limits of $100,000. We then turned to her own underinsured policies. There were four automobile policies in the Boatright family. Three of those were issued by Illinois Farmers Insurance Company of Aurora, Illinois. One was issued by Mid-Century Insurance Company, Los Angeles, California. The insurance companies denied the underinsured claims, stating that they had anti-staffing clause available under each of the policies. We didn't file a declaratory judgment action. But now when you say Illinois Farmers Insurance, Aurora, Illinois, is that a corporation? Or is that somebody's name? Is somebody also known as? Your Honor, that is the heart of the appeal. I know that, but I just want to know. Is it a corporation? I don't know. I think if you look at the internet, it indeed is a separate insurance company. And you want to believe everything that's on the internet? Like I said, Al, you're right. Okay, but there's got to be some kind of an insurance corporation, doesn't there, somehow? Oh, there is. There are insurance. There is a large farmers insurance group of companies, no doubt about it. There are. What's it called? What's it called? What's it registered as? Don't know. I mean, there is the heart of this. What I think is a very simple appeal is if I'm an insurance company, if I'm an insurer, and I buy these policies, and there are anti-stacking clauses, I do not contend that the anti-stacking clauses in and of themselves are verbiage of ambiguous. I don't contend that. What I contend is there is a predicate to those clauses being invoked, which is farmers insurance says we don't want to pay more than one limit if more than one policy has been issued by our group of companies, but they never define it. Do they sign it like so-and-so corporation? They do sign it, but they don't sign it as Illinois Farmers Insurance Company or Illinois, nor do they sign it as Mid-Century Insurance Company Los Angeles, California. Now, those two names are issued at the front on the declaration sheet of both policies. Right. I understand that. They could very easily say, if they wanted to avoid this problem, a member of the farmers insurance company group of companies. They could very easily say that. They don't. They do include in the back of the policy a box in the section that's called informational, the informational portion of the policy that discusses things about the rights, the privacy rights. There's also an issue regarding whether that's part of the policy. It's on page 22, in my brief. It's on page three of the notice of information practices attached to all three policies. Well, see, the defendant in this case is the farmers insurance company. Correct. Which I assume is a corporation. It is. And is this other company, allegedly, number four, whatever that one is, is that a wholly subsidiary of Illinois farmers insurance company? I don't know. Oh, okay. I do not know. You know, is that spelled out anywhere in the policy? No, it's not. Is the criteria for membership within that group spelled out even in the policy? No, it is not. Does this include subsidiaries, wholly owned subsidiaries, successors, predecessors? I don't know. It's not spelled out. I would think that they would have separate corporations in case of catastrophe. I agree. And I don't think there's any doubt that there are separate companies that are members of Illinois farmers group. There might not be a nebulous, overarching corporation that's in charge of everything. I don't know. Now, the real question is, how does she know when she gets her insurance and makes the claim and then says... It's whatever's in the policy. Whatever's written down on the policy. That's right. Well, let me ask you this then. Okay. Because you claim that she's insured under all four policies. Correct. But her name isn't listed on one of them. That is correct. In fact, two of them. It's not on two of them. I see it on... Oh, that's right. That's Josh's book, right? Yeah. On two of them. That's right. So why would it be at least limited to two? No, because there's no doubt that she's husband and wife, living in the same household. Todd, who is a partner, is listed on all four. So she clearly fits under the coverage as a resident of the same household. Relative resident. She's, at all times, she was the wife living in the household of the listed insurer. So she's covered under all four policies. Now, Justice Welch has hit on it, so I'm going to cut to the nut of the argument, is the insurance company argues, with a double-edged sword, I think, that that box, the text box at the very back of the policies that list 18 different companies, is not part of the policy. They say that's misinformation. Well, all right. I'll accept that. I'm not sure why. Because, you know, if I'm an insurer and I get a policy and it contains endorsements and it contains a stack of papers, I'm not sure what's the policy or not, frankly. There indeed is no verb in here that says this is part of our policy, but you get it. It's attached to the policy. You read it. The box says, this notice is sent on behalf of the Farmers Insurance Group of companies, whose members included are not limited to. And then it lists 18 different companies that include such names as, and again, to jump ahead, because I'm very obvious you're familiar with the case, that the argument might be made, or the suggestion might be made, that there is no difference between Farmers Insurance Company and Farmers Insurance Company Aurora, Illinois, that I'm splitting hairs here. That could be an address, that could be a mailing address, could be a driving address. I contend it's not, because if you look at the list, I see 10 different companies whose only differentiation from the other members of the list are geographical designations. For example, Farmers Insurance Company and Kansas Corporation, number six on the list. I'm looking at a list that's printed on page 23 of my brief, where I make those those lists of 18 companies a lot easier to read. But number six on the list is Farmers Insurance Company, Kansas Corporation, Farmers Insurance Company of Arizona, Farmers Insurance Company of Idaho, Farmers Insurance Company of Oregon, Farmers Insurance Company of Washington, Farmers Insurance Company of Columbus. Now that's a town, not a city, no state. The next one is Farmers Texas County Mutual Insurance Company. Now we've got a county involved in the list. And then Illinois Farmers Insurance Company. Now that's close. That is close to who issued my three of my policies. And the issue for the court is, is that close enough for the company to be able to come in and deny three different underinsured policies? Was that raised in the trial court, that issue? Yes, it was. It was? Yes, it was. Is it in their position? It doesn't matter whether or not you know or not they have the right. I mean, I don't think many people would have any civic property and casualty company is a farmer's own. Exactly right. It's not a utility company. So then we have to question whether or not they have a duty, I guess, to go out and ascertain every one of the farmers own insurance. Yeah, that's their argument. I think that's their argument. Because it also says not limited to. Correct. And they argue that. They say that's like an ombuds clause that includes everything, and therefore they can add companies later and subtract companies later. And I suppose they can. I don't have any problem with them with the insurance group of large conglomerate adding companies, subtracting companies. But if they're going to exclude coverage on that basis, they got to make it clear in the four corners of the policy. It would be simple enough. Every time you renew the policy, if you added the company that had issued the policy on the declaration sheet, just have a line under there that says a member of the farmers insurance group company, as it is, as you point out, Justice Captain, how are they to know? It's an arcane thing. It's esoteric. It's within the corporate structure. What are the guidelines? What are the rules? Can you get kicked out for being too many claims? Can you get, you know, uh, what was farmers insurance group of rural Illinois? Remember when boat rides bought the policies? Was it a member when they renewed the policies? Did it fall out of membership sometime? I don't know. They're, and therefore they should not. That is a latent ambiguity. Latent ambiguity is that we're screwed against the drafter, against the insurance company. We should not be left to the precarious, uh, scavenger hunt of the internet to try to figure out what our coverage is or not. It should be within the four corners of the policy. And they are, and they, I'm in front of Judge Blyer and Matthew Davis saying, or an exhibit saying, look at the internet. Here's our webpage. Check it out. And might have a couple problems with that. One is a nebulous nature. They were changing the dynamic nature of the internet. Secondly, it's not the four corners. Thirdly, it's not reliable. If you're, you're leaving a coverage issue of hundreds of thousands of dollars to some kind of keyboard, God knows where. And that's not how we should determine the coverage. That's not how Judge Blyer did, by the way. He did not rely on the internet. He said, I will not rely on that. I did not put out my exhibit. The other thing they, they argued is we supplied an affidavit from the company saying that that mid-century was a member of the insurance company. Well, here we are making a claim of basically net $300,000, $400,000, much of it we already got on a bottle of energy. And, and we're going to be denied coverage based on an affidavit from the company itself, from claims adjuster and officer or something saying, oh yeah, I was a member. Well, the affidavit doesn't say when, doesn't say, you know, was a member at the time the they renewed the policy, it just says that the mid-century was a member. And by the way, it acknowledges that mid-century insurance company, Los Angeles, California, isn't a separate company, but again, these aren't just addresses on the policy. I mean, these aren't just addresses added to mid-century. They say this is a separate company. I looked at the internet. This is not something Judge Blyer relied on, but it's something that points to the dangerous nature of laying the internet to determine coverage. And that is that the internet says mid-century is not licensed to, to issue policies in Illinois. They're only licensed to underwrite a fee for Washington. Well, this is an Illinois case, garage in Illinois, wreck happened in Illinois, people live in Illinois. So what are they supposed to make of that? If you look at the internet, I think it's a simple case. If they're going to exclude, they have to exclude clearly. Uh, their own language, they drafted said, we exclude stacking. If, if these companies that issued these two policies are member companies of Illinois Farmers Insurance Group. I look on the declaration page and I see two companies that aren't listed in a list. Uh, they're not defined anywhere in the policy. Uh, there's nothing in the four corners to let me know if there were members of that insurance group. Therefore, these two anti-stacking clauses are not involved. And therefore we get all four policies. At the very least, it ought to be sent back because this was the two, six, one, nine and judge Blatter basically knew that there's no way I can make a cause of action. And I think there's all kinds of questions in fact here, but while, but, but if, if you just send it back, I implore the court, of course, you're going to do business the way you feel best. But if it goes back just on that, we're going to do some discovery and probably be right back here in nine months, you know, on the same issue. It's going to come, I think, come down to the same issue. So while the court has that, I would pray that the court would interpret the policy, look at it and say, hey, it doesn't matter what the facts are. The four corners don't put these two companies within the farmers group of insurance companies. And therefore, the anti-stacking language is not involved. Thank you. Thank you. Thank you. We'll have the opportunity for rebuttal. Mr. Worker. Good morning, Your Honor. Good morning. Could you answer my question? Sure. Is it, is, is, what is the corporation? Illinois Farmers Insurance Company is the corporation? There's two corporations, Your Honor. Only two or is there 18? No, there's many different corporations. In fact, in that list, there are a number of, a number of companies in the farmers insurance group. Now, is this a stock company or a mutual fund? They're different. Some are international. Some are stock, some are mutual? Some are stock companies. Some are inter-insurance exchange. There are different companies with different paper and they issue different policies. And there's various states that they're approved to write in. And, you know, I'd like to correct one thing that counsel said. On page C-259 of the record, mid-century insurance company is licensed to write policies in the state of Illinois. And there's two separate corporations here. Illinois Farmers Insurance Company, which is an Illinois corporation, licensed to write policies in the state of Illinois. Mid-century insurance company, which is a corporation licensed in the state of California, allowed to write policies in the state of Illinois, authorizes to write policies here. The policy language at issue here, Your Honor, is very clear. That any member of the farmers insurance companies is included in the anti-staffing language. Okay. Now, how do you become a member of the Farmers Insurance Company? Is there a membership application? Or what makes you a member? These companies operate under a trade name, Farmers Insurance Company. I'm sorry, I'm having difficulty hearing you because of my hair conditioner back here. I might have to speak a little louder. These companies are operating under a trade name for joint marketing purposes, selling their product. You know, similar to AIG, that operates under a number of different insurance policies. Lexington, National Union. In fact, there was a recent Illinois Supreme Court case with regard to whether or not AIG could be sued as AIG when another company issued the policy. So these companies operate under this trade name for mutual benefit of marketing, their agency floors, using accounting claims department, and the like. And, you know, each company operates under its own paper, with its own personnel, and they share in these different, they pay for the sharing in these different groups that they can operate in. So, as part of the member companies, each individual insurance company operates and runs its own paper and its own company. They have different owners, they have different stockholders, and, you know, they're included separately with the policies that they issue. In this case, Illinois Farmers Insurance Company issued a policy to the board, actually three years ago, and included within that policy is anti-stacking. And the anti-stacking language indicates that they're preventing any single insurer from stacking multiple policies that the company issues. And included in that is policies issued by other companies. In this case, Illinois Farmers is a preferred policy for, you know, better policy holders. Mid-century is more of a substandard type insurance policy issued to low-graded policies. In this case, it was issued, I believe, to Mr. Brogan Wright and his son, Josh. Okay, so they insure slightly different risks, and the premiums are different, associated with different type of risks that they're accepting in the case. When the corporates purchase the policy, they purchase it from a farmer's agent that's authorized to write all these different policies for the different member companies. There's different risks that each of the member companies insure. You know, truck insurance exchange is a member company, they're commercial. They write commercial trucking policies and commercial type risks. Fire insurance exchange is a homeowners type policy, and they insure homeowners type risks. Illinois Farmers is a premium auto product issued by one of the members of the homeowners insurance group. The argument made by the corporates started out under the Gates-Gobin line of cases, arguing ambiguity based on placement of multiple premiums on this coverage. The problem is, when we raised the issue in the underlying case with Judge Blair, we indicated that Strickland basically looked at that issue and said, when you have multiple policies in a household, if you issue separate policies with separate deck payments, that does not create the Gates-Gobin type of ambiguity. So, to avoid that ambiguity, they come up with this ambiguity argument. If you look at the ambiguity argument, it's illogical. In order to create an ambiguity in the policy, it has to be a reasonable interpretation of the policy. When you look at this policy, Illinois Farmers policy and mid-century policies are almost identical in the verbiage that they use. It would be illogical for an insurance company to put a limitation of coverage in their policy for a company that they're not a member of. So, it's presumed in the policy that policy issued by Illinois Farmers, with the limitation for other member companies of the Farmers Insurance Group, that they are a member. I mean, it would be illogical for Farmers to issue a policy limiting staffing of policies, for example, with a state farmer, or with AIG. You said that they would issue the policy. Farmers would issue a policy with a limitation clause for a company that they're not a member of. Yeah, but I thought the policies came out in different names. They did. So, Farmers issued a... What's that? I forget the... Illinois Farmers issued three policies, mid-century insurance... So, Farmers Insurance Group issues mid-century policies. No, Illinois Farmers Insurance Company issues its own policy, mid-century issues its policy. So, there's no... Both companies are members of the Farmers Insurance Group. Okay, but I'm trying... Where did they get that one policy? Another agent, or... Where did they get it? I'm sorry? From the same farmer's agent, because the farmer's agents are authorized to write any of the policies that are part of the member group of companies in the Farmers Insurance Group. Well, now, in this case, he's arguing that they weren't listed. They aren't listed. So, they could issue a country company's policy. What I'm getting at, could he issue a country company's policy? No. Because they're not listed. No. They're not listed. They're farmer's agents. The only way that a farmer's agent... They're captive agents. Just like state farm laws, they have their agency forced to sell their products. Farmers have their agents that sell their products. A farmer's agent is only authorized to write outside of the farmer's group of companies if farmers itself will not accept the rights. So, farmer's agents sell farmer's policies. And they sell farmer's policies that include any of the member companies. And the list is many. I mean, if you look at the record... It's 18, I think. It's more than 18. If you look at the internet, pages that are included in the record, there are multiple number of... Well, I'm just worried about what's included in the contract. What's included in the contract is what I'm... Included in the contract is a reference to the farmer's insurance group of companies, members of the farmer's insurance... And where do you got to go to figure out who they are? You could figure it out by, in this case, comparing the language of the policy to one another. I mean, Illinois farmers included a limitation clause in its policy saying that it was limiting its coverage to other members, anti-statutory language to other members of the farmer's insurance group of companies. Mid-century has the same language in their policy. That's okay. Like homeowner's policies, we're all kind of the same. Just the names are changed. So how could you look at the policy and determine... Policy, the last page of the policy where it's signatures, it lists Illinois farmers and mid-century in the same policy form that are signed in each of the two separate policies. So if you look there, it's logical that the companies are part of the member group. But you're saying it doesn't matter. I'm saying that doesn't matter. Because it didn't need to even be listed here is what you're saying. I'm saying that all policy terms need to be defined. If a policy term is readily ascertainable, which it is in this case, you can find out from the Department of Insurance because both companies are registered to do business in the state of Illinois. So you're saying it is the duty of the insured or the potential insured to find out who a member company is. It's no different from finding out any other bad defined term in the policy if it's given a plain ordinary meaning, which in this case it is. Because you've just told me that mid-century insures a higher risk. And I didn't know beforehand that they had anything to do with farmers. But and they are listed. I guess there's a question of how they're listed. But let's just presume that the situation was that another farmers member was not listed in here, but had issued the policy and had a name that something like Civic Property and Casualty Company that would give you no clue that they were a member. You're saying that doesn't matter. Right, because it's readily ascertainable. Because it's readily ascertainable from the Department of Insurance. Or from the farmer's agent where they bought the policy. Or from the internet on the farmer's insurance website. All those are very reliable sources on which to ascertain which or which members are not. So your argument really doesn't depend at all on whether or not we've got these location designations afterwards. No. Or if they had provided this box of information, period. Right, I think that it's a very illogical argument to argue that there's no such entity as Illinois Farmers Insurance Company, comma, or or Illinois. Which was not argued in the underlying case. But following that argument out, Illinois Farmers Insurance Company is a corporation that's licensed to issue policies in the state of Illinois. This policy form was approved by the Department of Insurance for the state of Illinois, as was the mid-century policy. They're separate corporations owned by separate stockholders. They're companies that are listed and referenced in the filings that they're required to make in the Department of Insurance. But more basically, runners, if the insurer purchases a policy from a singular farmer's agent, that they go to an Illinois farmer's agent or a mid-century agent, and they bought the policy from a farmer's agent in an Illinois farmer's policy, and a mid-century policy, and the clause is limited to members of farmers insurance companies, it's logical that they're members of those companies. It's a logical reading of the policy. What is not logical is that an insurance company would issue a policy which would limit stacking of policies they don't issue from another company. That would be a logical reading of the policy. And we don't need to strain and torture the language of an insurance policy in order to find ambiguity. That's not how courts in Illinois deal with this issue. So if you look at the fact that both policies contain the identical language, both policies limited to the farmer's members, both are members of the farmer's insurance companies, it's a readily ascertainable term, both policies were issued at the same time, so they were members at the same time. So to create this argument that the main adders are trapped is really a red herring and not relevant for the inquiry in this case. So you disagree with the plaintiff that this is a new issue that's not been resolved, in which they claim that you cannot stack the coverage of policies which have been issued by a company which is part of the farmer's insurance group? Right, in Maka and Mark, they looked at this exact language. They found that it would be clear and unambiguous to limit stacking for those policies. Now, you have to have an ambiguity before you get into the issue of whether or not you do a Yates or Goldman type analysis in this case. I'm suggesting to the court that in your decision in Kocher, you already approved the strictly grizzly of the second district where it falls from actually to the Illinois Supreme Court cases as well, Grissick and Pops, which say that if you issue multiple policies and you charge a separate premium, it's okay as long as you have clear anti-stacking language, which this language has been upheld in two courts, one in 2000 and one in 2002, as being clear and unambiguous. Now, that's the Supreme Court? No, the first district, basically. First district. Yes, which is consistent with looking at the language. In those cases, they look at a number of different districts in reaching their conclusion that the language at issue in this case was clear and unambiguous. Again, it would be an impossibility for an insurance company to define every term in an insurance policy. But it wouldn't be an impossibility to list every company that they had an ownership in? Not necessarily. I mean, policy forms would have to be amended repeatedly over and over again. They would have to mail out numerous notes. That's the whole point of making language so it's inclusive of the member companies that are involved in writing and issuing policies for the farmers insurance company. The farmers agents that they purchase these policies from, they need to purchase the policy either through farmers directly or one of their member companies directly or one of their agents. So it has to be done through somebody that sells all these policies for the farmers group. And the different states have different insurance companies. There is a mid-century insurance company in Texas, which is a different company from mid-century insurance company, which is based in Los Angeles, California, that issues policies in the states that are identified in their web page as being approved by the Departments of Insurance where they've got those policies approved. So there is a practice in the insurance industry. They have standard form policy language that gets approved by the Department of Insurance. And that based on that approval process, it's very hard to continually amend the body of policy form to make changes when the farmers group goes out and acquires other insurance companies. So the point in this case is that both policies, actually all four policies, three of the Illinois farmers and one from mid-century were purchased at the same time through a farmers insurance agent. The language in the policy refers to both insurance companies. So there's no blatant or any type of ambiguity created to create some type of misunderstanding that Illinois farmers and mid-century were under the farmers' control. We believe that the policy language in question here is clear. It's unambiguous. It's been upheld. And the point of the anti-staffing language is that farmers issues different types of policies that apply to different types of risk. And what they wanted to do is limit the coverage to the policy for the vehicle that was driven at the time of the accident, which is the case here. That they want to preclude that if they issue a lower type policy product to a household member, Josh and the father for that vehicle, that they were not going to have to pay double limits for a singular accident not involving the car that was insured under that policy, which is permissible in the state of Oklahoma. We believe that based on these concepts. Now let's back up though. They did not only, they issued that to more than Josh and his father. Was it Josh and his father? They were the named insureds. But they issued it to more than that because they included the wife. Yeah, they include as a definition of a named insured of any family member. Any family household and all that stuff. Right. Just like in Peru, you can limit coverage to family. You know, our own Supreme Court said that's permissible to limit the coverage for family members. So this policy clearly does it. It applies not only to the named insured, but to family members as long as the policy was issued by any of the members of the Parliament's insurance group. I think the term is clear. I think it's readily ascertainable. And the language itself has been upheld as clear and unambiguous by the first district in two separate opinions. Unless there's any other questions. Thank you. Thank you. Thank you for your argument, Mr. Doris. The two cases to which counsel is referring are Martin and Maka, their first district cases. Neither one come anywhere close to touching the issues that we've argued about today. They did not argue anything about there being a predicate for the anti-stacking clauses that the companies being part of the farmer's insurance group or those are affected. The Maka case had to do with the premium rule argument, which this court, I have not argued the premium rule in this case. And he insinuated that we start out by arguing the premium rule. My understanding is there is no premium rule in Illinois. It's not. It is in some states, but not Illinois. We've never argued the premium rule. And basically, Maka was lost because that's what the counsel tried to argue. In the Martin case, it is nothing even close on that either. They were trying to argue about whether the language in the underage, the anti-stacking language was in the policy itself, not repeated in the underinsured section. And therefore, it didn't apply. I can't, in all good faith, I stand here before the court and I cannot find anywhere this issue has been argued. The arguments that counsel made were interesting and necessary to help flesh out and help us understand, I guess, the situation. But of course, nothing about that was on record. And the argument that counsel makes basically is it's just logical to assume that these companies are out there and that if they issue the policy, they're a member of the farmers group. But then he goes on to say that there are many more companies than the 18 that are listed on the policy, that the agents have authority, the right for more than just several companies and they can ship them around among companies. That's all academic and understandable or not understandable. I mean, it's all interesting, I should say. But it's confusing. It's outside the record and it's certainly outside the four corners of the policy. And basically, it's giving the insurance company who wrote four policies to this family with four different underinsured coverages and accepted money for those coverages for a long time to come in when they have a serious claim and say, go talk to your agent and try to understand what's going on with farmers and try to understand whether there's an overarching group or whatever. You might want to check with the Department of Reinsurance. Oh, by the way, you might want to check on the internet. That's a slippery slope, but I don't think that the law should go down. I think the law should be safe to stay within the four corners of the policy, especially when you're talking about the situation where an insurance company is denying coverage and the courts have said repeatedly public policy is, including in the cases he cites, by the way, in the mock case, it talks about how public policy is in favor of coverage. And if an insurance company is going to restrict coverage, they have to do so clearly. And he argues that it'd be difficult on the companies to have to do that. No, it's not. When a new company joins a farmer's group, whatever that is, just simply when you issue the policy, you simply say a member of a farmer's group of insurance companies, just underneath that, and it is very clear. Then the person that really wants to understand what the policy is issued or a person in need or court to need to understand, to look right on the deck sheet and know exactly what is the member or not. We don't have to go again to the vagaries of nebulous internet. By the way, Yates is not a premium case rule as he was not a premium root case as he assimilated. And again, I'm not arguing that the underlying language is ambiguous, but what can't be determined from looking at the policy is whether these two companies are a member of farmer's group or an insurance group. In fact, in looking at the policy, the only realistic conclusion is they are not, because they are not within that list of 18. Was that raised in the trial court? Yes, it was. Yes, it was. The declaratory judgment action complaint basically said, here are what we started out, by the way, with one policy, because we didn't have all the policies when we first filed it, and then we expanded it to include and ask the court to determine the mid-century and the farmers, whether there was a few I.E. companies to declare our rights. It was a pretty broad argument that was made. Thank you. Thank you, Mr. Doris. Thank you, Mr. Worker, for your brief sitting argument. We'll take a matter under advisement and record rule.